H. E. SCHAFFER v. EMMA W. SCHAFFER, Appellant.

**Divorce:** EVIDENCE. A wife was somewhat ill-tempered, was not a good housekeeper, spent considerable time away from home while engaged in public enterprises, and made some debts. Several witnesses testified that she had wilfully abused and beaten her husband, and had used abusive language to him in the presence of their children. Prior to the advent in their home of a domestic, their relations were reasonably harmonious. When trouble arose between the wife and the domestic, the husband refused to have her discharged, and he afterwards occupied a bed apart from his wife in a room that was separated by a closet only from the room occupied by the domestic. He frequently went to places of amusement with the domestic, leaving his wife at home. *Held,* that the husband was not entitled to a divorce.

*Appeal from Mills District Court.*—HON. W. R. GREEN, Judge.

THURSDAY, OCTOBER 20, 1898.

ACTION in equity for a divorce, and for the custody of minor children. There was a hearing on the merits, and a decree of divorce in favor of the plaintiff. The defendant appeals.—*Reversed.*

*Stone & Dawson* for appellant.

No appearance for appellee.

ROBINSON, J.—The parties to this action were married to each other in October, 1867. Nine children have been born to them, of whom six are living and four are grown. They have resided in Malvern for ten years. As grounds for divorce the plaintiff alleges that the defendant has willfully abused and beaten him, and has become angry, and used vulgar and indecent language to him in the presence of their children; that she cannot control her temper, and has made violent threats against members of the family, and has annoyed and harassed the plaintiff; that she has neglected her household duties and her duties as a wife, has absented herself from home the larger part of the time, and has so conducted herself as to impair his health; and for ten months preceding the commencement of this action the plaintiff had felt that his life was actually endangered by her. The defendant denies all allegation of improper conduct on her part. The district court granted to the plaintiff a divorce, but did not make any provisions for the custody of the minor children. The testimony of the plaintiff and of his daughter Maggie, who is twenty-six years of age, and of his son De, who is seventeen years of age, and of a Mrs. Crow, who lived in the family as a domestic, tends to sustain the claims of the plaintiff. But the evidence shows the following facts: The defendant has for a number of years been engaged in numerous enterprises of a public nature; has been active in the church, Sunday school, and temperance work; has been interested in the science of healing; has written essays; and has canvassed for the sale of different articles. She spent considerable time in preparing a chart on a roll of cloth seventy feet in length,

designed to illustrate a "plan of redemption." She spent considerable time away from home, was not a superior housekeeper, and contracted some debts. The plaintiff was in sympathy with the larger part of the work in which the defendant was engaged, and claims to have said to her: "I don't object to your attending to temperance work, church, woman suffrage, or mental science, anything of the kind, if you do it outside of your household duties; but I would like to have them attended to first." Maggie states that three-fourths of her mother's time was spent away from home, and of that spent at home one-half at least was spent "with books on questions of temperance, or letters on temperance, essays on temperance, and receiving calls outside of family affairs." The plaintiff claims that the defendant was away from home one-fourth of the time, excepting the year preceding the trial; during which, he states, she was away three-fourths of the time. He claims, also, that there have been dissensions between himself and his wife at intervals throughout their married life. We are satisfied, however, that there was no serious trouble between them, and that their life together was reasonably harmonious until Mrs. Crow was taken into the family. Neighbors who visited the family frequently for many years, and who had opportunities for knowing the actual relations which existed between the plaintiff and the defendant, testified that they appeared to live together pleasantly until some time after Mrs. Crow was employed, and that the defendant did not neglect her household duties to the extent claimed by the plaintiff. A son and a daughter testify to the same effect. We are satisfied that, although the defendant might well have devoted more of her time and thought to her family, and less to matters of a public nature, yet that the plaintiff did not regard her course as especially reprehensible, nor as affecting his health, until after the arrival of Mrs. Crow. On the contrary, he sympathized with and approved what his wife did, although he occasionally complained that she was required by others to do too much church and other work. On the nineteenth day of January, 1893, the plaintiff

wrote to his daughter Maggie a letter, which was devoted largely to his family affairs. In that letter he spoke of some of his children as disobedient and ungrateful. Among other things, he said: "I know both ma and myself made mistakes, and many of them, but it was not because we wish to do so. We both wish to do what is right, and to be impartial to all you children, but you will not give us credit for it. It is a terrible way the boys treat and talk to their mother. The raising of six children and the care of three others will try the patience of a Job, or the goodness of an angel, and I don't think there is a woman living who could maintain a good temper under all circumstances, and be, as De said to her the other day, 'If you was the right kind of a mother we could do better.'" Although the letter did not say the conduct of the defendant had not been reprehensible in any respect, it made no complaint respecting her, but was such a letter as a husband who had a proper regard for his wife might have written under the same circumstances, even though she had been at fault in some respects. The evidence satisfies us, however, that it fairly represented the feeling of the plaintiff for his wife at the time it was written. Mrs. Schaffer incurred a few debts, but provided for the payment of nearly all of them. In November, 1892, Mary Crow, a woman about twenty-three years of age, expecting a divorce from her husband, was employed as a domestic in the plaintiff's family. She had been known to the defendant, and was probably employed by her. Mrs. Crow brought with her a child less than one year old. She appears to have done satisfactory work, and there was no trouble until the twelfth day of March, 1894, when there was some disagreement between Mrs. Crow and Susie Schaffer, a daughter of the parties to this action, then about twenty years of age. Mrs. Schaffer defended her daughter, and warm words followed. Mrs Schaffer reported the matter to her husband. A question of veracity between herself and Mrs. Crow arose, and her husband declared his belief that Mrs. Crow was right. That made the defendant angry, and she started to enter the room in which Mrs. Crow was lying in

bed, declaring that she would make Mrs. Crow tell the truth, or "mash her teeth down her throat." The plaintiff interfered to prevent a collision, and states that his wife then struck him. He is corroborated in that by Mrs. Crow, and contradicted by his wife and his daughter Alice, who was then in the room. It is at least doubtful if the plaintiff received any blow from the defendant at that time, but, if he did, it can be said that it was given under great excitement, and with some provocation. From that time the defendant insisted that Mrs. Crow should leave the house, accused her of being a woman of bad character, and spoke of her as a prostitute, a harlot, a hell cat, and a woman of hell. The plaintiff refused to discharge Mrs. Crow, saying that she should not go until the charges against her character were withdrawn. Mrs. Crow treated the defendant with contempt, refused to obey her directions, and illtreated the children. The defendant complained to the plaintiff of Mrs. Crow continually, and he finally said if the complaints were not stopped he would occupy a bed apart from his wife, and about the first of April he left his wife's bed, and occupied one in a room in the northwest corner of the house. Mrs. Crow occupied a room in the northeast corner of the house, and between the two rooms was a closet which opened into both rooms, so that when the closet doors were unlocked persons could readily pass from one room to the other through the closet. There were two doors which opened into Mrs. Crow's room exclusive of the closet entrance, both of which were kept locked at night. In addition to the closet door, there was one door which opened into the room of the plaintiff, and that door he kept locked at night, but both closet doors were kept unlocked. The defendant and others, including her son Dell, remonstrated with the plaintiff on account of the course he was pursuing, but without avail. When the plaintiff left the defendant's bed, she asked that she and her children might be permitted to occupy the room in which Mrs. Crow slept, but the request was refused. The plaintiff and Mrs. Crow went to church and to places of amusement together, leaving the defendant at home, and Mrs.

Crow sought the presence and society of the plaintiff, to the great annoyance of the defendant. The plaintiff, the defendant, and Mrs. Crow were members of the same church. An elder of the church was called in, and attempted to effect a settlement which should include the withdrawal of Mrs. Crow from the house, but the settlement was defeated by the plaintiff. The elder sent to the plaintiff a notice in terms requiring him to make choice between his wife and children and the church on one hand and Mrs. Crow on the other, but the plaintiff denied that he had done any wrong. The defendant did not accuse him of criminal intercourse with Mrs. Crow, but charges were preferred against him and he was expelled from the church for "disorderly walk." Threats of treating him to a coat of tar and feathers were made in anonymous letters which he received. Mrs. Crow received what she terms "white cap letters," and, finally, on the advice of friends, she left the house about the first of August, 1894. Some months after Mrs. Crow left, the plaintiff divided the house, and one of the two parts thus made was occupied by himself, Maggie, and De, with Mrs. Crow's child, and the other part was occupied by the defendant and two of her daughters. She resisted this separation, but without avail. Maggie corresponded with Mrs. Crow, and the plaintiff sent with Maggie's communications letters which he wrote to Mrs. Crow. A few days before the trial in the district court was commenced, Mrs. Crow visited the part of the house occupied by the plaintiff, and the defendant thereupon went into it, and, as she admits, "pounded Mrs. Crow." There is no doubt that Mrs. Schaffer is high tempered, and that, when angry on account of Mrs. Crow, she has used improper language, and has attempted violence, with some success in one instance. But she had been subjected to great provocation. The course the plaintiff has pursued respecting Mrs. Crow cannot be justified on any ground. He defended and exalted her, at the same time offending and humiliating his wife. His course was of a nature to cause the troubles of which he complains, and that it was the cause of the larger part of them we have no doubt.

The health of the plaintiff is not good. He has suffered for many years from a disease contracted in the army, and ·for which he draws a pension. He is naturally nervous, and claims that his wife's conduct so excites his nervous system that he cannot sleep. He states that when he is excited "his heart commences to thump so he can hear it," and that it is caused and made worse by the treatment he has received from his wife. As we have said, we do not find that his wife's conduct caused him any serious trouble before the advent of Mrs. Crow, and his troubles since that time have been largely of his own making. We are satisfied that when he gives to his wife the treatment to which she is entitled, he has nothing to fear from her. We conclude that he has failed to establish a sufficient ground ·for divorce, and the decree of the district court is REVERSED.